IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
DEBRA D. STEPHENS, etc.,        }
                                }
        Plaintiff,              }
                                }        CIVIL ACTION NO.
v.                              }        08-AR-2115-S
                                }
CITATION CORPORATION, et al.,   }
                                }
        Defendants.             }
```

**<u>MEMORANDUM OPINION</u>**

Debra D. Stephens ("Mrs. Stephens"), as personal representative of the estate of Robert Stephens ("Mr. Stephens"), deceased, and as beneficiary of an insurance policy on the life of Mr. Stephens, sues Citation Corporation ("Citation"), Sarah Bentley ("Bentley"), and Reliance Standard Life Insurance Company ("Reliance"), alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461 (2006). She seeks life insurance proceeds that Reliance has refused to pay. Before the court are motions for summary judgment, one filed jointly by Citation and Bentley, and the other by Reliance. Had defendants filed proper motions invoking Rule 12(b)(6) F.R. Civ. P., challenging Mrs. Stephens's ERISA claims, like defendants' Rule 12(b)(6) motions that successfully targeted the supplemental state law claims, the ERISA aspects of her complaint would, by now, either be more precise and comprehensible, or they would have been dismissed. The conspicuously absent Rule 12(b)(6) motions, if they

had not proven dispositive, would certainly have called for amendment to force plaintiff to meet the pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). Instead of Rule 12(b)(6) motions, the court is faced with Rule 56 motions that challenge the ERISA claims. Whether the federal claims that are the focus of Rule 56 motions are personal claims of Mrs. Stephens as named beneficiary under a life insurance policy, or are claims she presents in her capacity as personal representative of her husband's estate, is a question not yet asked, and one that the court will not try to answer. The court obviously laments the absence of Rule 12(b)(6) motions, a lament that started with the court's order of July 1, 2009, explaining to the defendants how to file a Rule 12(b)(6) motion in the Eleventh Circuit.[1]

---

[1]    This court's order of July 1, 2009, brought *Andrews v. Lakeshore Rehabilitation Hospital*, 140 F.3d 1405, 1406-7 (11th Cir. 1998), to the attention of the parties. The court explained:

> The Eleventh Circuit no longer permits the procedural device still used routinely by judges and litigants in this court, namely, deeming an affirmative defense contained in an answer as a Rule 12(b) motion if it contains the language of Rule 12(b). In *Andrews v. Lakeshore Rehabilitation Hospital*, 140 F.3d 1405, 1406-7 (11th Cir. 1998), the Eleventh Circuit held:
>
> > As the first affirmative defense, the Defendant Hospital's April 26 Answer asserts that Plaintiff failed to state a claim upon which relief could be granted. No party as yet had filed a motion to dismiss. On May 5, however, the district court *sua sponte* dismissed Plaintiff's retaliation claim as not cognizable under section 1981.[2]
>
> ---
>
> > [2]    The Clerk's docket sheet lists entry number 5 as an "Answer" and a "Motion 12(b)(6)"; however, **number 5 is only one pleading entitled an "Answer," and no separate motion to dismiss is filed or referred to in that Answer.**

This case presents a unique situation in which the plaintiff states no state law claims and barely articulates an actionable federal claim, but in which Reliance, the primary defendant, fails to challenge plaintiff's pleading deficiencies, and fails even to argue against the one federal claim that will barely survive its Rule 56 motion. For the reasons given below, Citation's and Bentley's joint Rule 56 motion will be granted, while Reliance's Rule 56 motion will be granted in part and denied in part.

## PERTINENT FACTS[2]

Mr. Stephens was employed by Citation as a maintenance superintendent at its Bessemer, Alabama plant. Mr. Stephens participated in a Group Life and Accidental Death and Dismemberment Plan ("the Life Plan") sponsored by Citation, insured by Reliance,

---

Defendants, Citation Corp. and Sarah Bentley, filed an answer on June 30, 2009, which contains what appears to be a Rule 12(b) defense. This court cannot gratuitously give a party something it has not asked for. Therefore, this court must, as of now, ignore said defendants' defense that tracks Rule 12(b) and must wait for a **real** Rule 12(b) motion if said defendants want to assert such a defense.(emphasis in original).

[2]      Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In accordance with Rule 56(c), the narrative statement of facts includes facts that are undisputed by the parties. Where there is a dispute, the facts are presented in the light most favorable to the non-moving party. "The movant 'bears the initial responsibility of informing the district court of the basis of its motion' by identifying those portions of the record that demonstrate the absence of genuine issues of material fact." *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558, 1563 (11th Cir. 1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)). Thereafter, the burden shifts to the non-movant to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact or that the moving party is not entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553. Conclusory allegations or legal conclusions are not enough. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

administered by Reliance, and governed by ERISA. Under the Life Plan, eligible employees received basic life insurance from Reliance in the amount of their annual earnings. The Life Plan contained a "Waiver of Premium" provision by which employees who became totally disabled prior to age sixty could apply for a waiver of life insurance premiums. (Reliance's Br. in Supp. Ex. 1 to Dec. of Karen McGill (AR - 20-23)). The Life Plan also contained a "Conversion Privilege" providing the right to convert to an individual life insurance policy, underwritten by Reliance, when the employee became no longer covered under the Life Plan, and a "Portability" provision by which he could, upon written application and continued payment of premiums, maintain coverage for up to two years after he ceased to be an employee. *Id.*

In early August of 2006, Mr. Stephens met with defendant, Bentley, Citation's Human Resources Supervisor. At that meeting Mr. Stephens apparently satisfied Bentley that he was physically incapable of continuing to work. Precisely when and how Mr. Stephens had become disabled is not reflected in the record. On August 18, 2006, Mr. Stephens again met with Bentley, together with Bentley's boss, Kevin Walsh ("Walsh"). At this meeting, Walsh and Bentley formally agreed that Mr. Stephens was totally disabled and informed him that he would no longer be expected to report for work, although Citation would continue to pay his salary and benefits, including his life insurance premiums, through February,

2007. The rationale for this concession does not appear. In early December, 2006, Mr. Stephens again met with Bentley, this time to discuss Mr. Stephens's options under the Life Plan. On December 9, 2006, Bentley, acting on behalf of Mr. Stephens (and/or Reliance?), sent Reliance an application for premium waiver, presumably by U.S. mail. (Reliance's Br. in Supp. Ex. C-3). At that time, Mr. Stephens was sixty-two years old. Not being under sixty, he was, according to the Life Plan, not then eligible for a premium waiver, unless, in fact, he had become disabled at least two years earlier, when he would have been less than sixty. Bentley says in her affidavit that she was aware of the problem words in the Life Plan when she forwarded the waiver application, and that she explained the perceived problem to Mr. Stephens, but that, at his request, she sent the application anyway. (Aff. of Sarah Bentley at ¶¶ 16-18). She had no conversation with any Reliance employee about the problematic situation. It is agreed by all parties that neither Citation nor Mr. Stephens ever received a response from Reliance to the waiver request. It is also undisputed that the **exact** date upon which Mr. Stephens became totally disabled was never discussed or agreed to by Mr. Stephens and/or by Citation and/or by Reliance. Reliance admits that none of its own officers or employees furnished Mr. Stephens a copy of the Life Plan, but Reliance says it relied on Citation to perform any such obligation it may have had. (Reliance Ans. at 5).   Mrs. Stephens strongly disputes

5

Citation's insistence that it furnished Mr. Stephens the documents mandated by ERISA.[3]

Mr. Stephens died on January 2, 2008. On January 25, 2008, Mrs. Stephens filed an application with Reliance (not with Citation) for the insurance benefits she says were due under the Life Plan. (Reliance's Br. in Supp. Ex. A). Not until **three months later**, on April 15, 2008, did Reliance respond, denying her claim, explaining that Mr. Stephens was no longer an insured on the date of his death. (Ex. 1 to dec. of Karen McGill (AR - 18-24)). There was no explanation offered by Reliance for its taking three months to make the denial determination, a conclusion that should have been simple to reach based on the reasons it gave. The denial letter also asserted that Mr. Stephens would not have qualified for a premium waiver, even if he had requested it on December 9, 2006, and further that he did not timely apply for conversion or portability. *Id.* The letter refers to provisions in the Life Plan that would have no relevance to Reliance's claim evaluation if, as Reliance insists, it never received the waiver request. *Id*. Mrs. Stephens thereupon invoked her right to appeal to higher authority within Reliance, as plan administrator. After a review that involved no new information, Reliance affirmed its earlier denial decision without elaboration.

---

[3]     When Mrs. Stephens speaks of an alleged failure to provide copies of the Life Plan, this court assumes that she refers not only to the actual Life Plan but also to the Summary Plan Description ("SPD"), and hereinafter the term "Life Plan" will encompass both the actual plan and the SPD.

On November 13, 2008, before Reliance's final denial, Mrs. Stephens began this action, naming Citation and Bentley as defendants, and alleging that they breached their fiduciary duty by failing to furnish Mr. Stephens with a copy of the Life Plan and by failing adequately to explain to him the terms of eligibility for waiver of premiums, conversion, and portability. After Mrs. Stephens had exhausted her appeal to the plan administrator, she amended to add Reliance as a defendant, alleging that Reliance breached its fiduciary duty by failing to furnish Mr. Stephens a copy of the Life Plan, by failing to respond to the application for premium waiver, by failing to advise Mr. Stephens about various Life Plan provisions that have turned out to be crucial, and by failure to pay.[4] Mrs. Stephens concludes her amended complaint by alleging that if ERISA mandates had been complied with, making Mr. Stephens aware of his life insurance options, he would have performed whatever actions were required, and that Mrs. Stephens would, without question, have been entitled to the benefits that are being wrongfully denied her.

## ANALYSIS

Under § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)), any participant in a plan governed by ERISA can sue in federal court "to recover benefits due him under the terms of his plan". Under a

---

[4]     Both Mrs. Stephens's original and amended complaint contained state law claims. Those claims were dismissed with prejudice on June 16, 2009.

**separate** ERISA subsection, § 502(a)(3) (29 U.S.C. § 1132(a)(3)), a beneficiary can recover in equity for breach of fiduciary duty. These distinct ERISA subsections are aimed at redressing separate and different violations, and a claim properly brought under one cannot proceed alternatively under the other. This is the heart of *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065 (1996), in which the Supreme Court held that when a plaintiff claims a breach of fiduciary duty, she can proceed **only** under § 502(a)(3) and not under § 502(a)(1)(B). *Id.* at 515. *See also Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, (11th Cir. 1999). Although Mrs. Stephens does not, in her complaint, invoke either subsection of ERISA by number, she repeatedly alleges that Citation and Reliance violated fiduciary duties. (Compl. ¶ 1, 9; Am. Compl. ¶ 4). Therefore, she either has clumsily chosen to proceed only under § 502(a)(3), or this court chooses that subsection for her, in the absence of a Rule 12(b)(6) motion.

Because there is no basis whatsoever for an ERISA claim of any kind against Bentley, the court will grant her motion and will dismiss the remaining action as against her.

As stated, Mrs. Stephens, in her complaint, does not expressly invoke § 502(a)(1)(B). Neither does she allege a "wrongful denial of benefits". In her brief in opposition to Citation's Rule 56 motion, she, for the first time, says that her suit is "in essence a claim for benefits," and therefore that "she can obtain relief in

the form of recovery of benefits or enforcement of her rights under the plan", ostensibly invoking both § 502(a)(1)(B) and § 502(a)(3). (Pl.'s Br. in Opp'n. to Citation's Mot. at 5). Mrs. Stephens not only fails to state a claim for wrongful denial of benefits that would have survived a Rule 12(b)(6) motion, but fails to allege the entity that was the ultimate decision-maker under § 502(a)(1)(B). Neither does she allege that the Life Plan contains, or does not contain, the discretionary provision encouraged by *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948 (1989). In other words, Mrs. Stephens fails to tell the court what she thinks is the standard of review. Perhaps she has never thought about it. Because Reliance relies, if casually, on the discretionary clause in the Life Plan, and because Mrs. Stephens never claims that Reliance's denial decision was "arbitrary and capricious", the court concludes that none of the parties understands the vagaries and nuances of ERISA, a statute that is still the subject of legitimate debate by and between good lawyers, and that reflects confusion in anxious courts. *See Florence Nightingale Nursing Service, Inc. v. Blue Cross and Blue Shield*, 832 F. Supp. 1456, 1457 (N.D. Al. 1993), *aff'd*, 41 F.3d 1476 (11th Cir. 1995), in which this court called ERISA "Everything Ridiculous Imagined Since Adam".

A core dispute here is whether Mr. Stephens received a copy of the Life Plan so as to advise him that the insurer, Reliance, was the final decision-maker and purportedly had complete discretionary

authority to decide any claim. What deference is to be accorded a conflicted decision-maker that is granted its discretion in an ERISA insurance plan, **if the insured himself never even saw the plan**? What effect, if any, does Reliance's obvious structural conflict-of-interest have if Reliance has purported to decide material disputed issues of fact, disputes that Reliance never has openly addressed? *See Blankenship v. MetLife Ins. Co.*, --- F. Supp. 2d ----, 2009 WL 5894831 (N.D. Al. 2009). Must, for instance, Reliance be presumed to have decided, with or without evidence to back it up, that Mr. Stephens was over sixty when he became totally disabled? This dispute, *inter alia*, has never been addressed by anyone, much less Reliance.

Mrs. Stephens says, with some degree of logic, that the coverage on Mr. Stephens would not have lapsed but for ERISA violations in the forms of misrepresentations or omissions. Her complaint never having been exposed to Rule 12(b)(6) scrutiny, the court treats her complaint to include a prayer for an exercise of the court's equitable powers to modify the Life Plan and/or to estop Reliance from relying on its express terms. If the Life Plan is strictly applied according to Reliance's interpretation of the language, and under its presumed version of the facts, the denial of benefits is facially justified. Because equitable modification and estoppel are not available under § 502(a)(1)(B), Mrs. Stephens must take "no" for an answer to the extent she claims under §

502(a)(1)(B). She is faced not only with *Varity*, but with *Todisco v. Verizon Communications, Inc.*, 497 F.3d 95 (1st Cir. 2007), in which the First Circuit dealt with a similar situation. It there held:

> Mrs. Todisco's alternative theory tries to recast her claim as one for benefits under section 502(a)(1)(B). This theory entails two steps. First, she asks us to invoke equitable estoppel based on Verizon's misrepresentations to her husband... Second, Mrs. Todisco asks us to allow her to claim, under a reformulated plan, the benefits that were promised to her husband. With Verizon barred from invoking the actual language of its plan, she believes that this claim will be successful.
>
> This approach is not permitted by ERISA's text. Section 502(a)(1)(B) allows a plaintiff to sue only for benefits "due to him *under the terms of his plan.* 29 U.S.C. 1132(a)(1)(B) (emphasis added). Here, the plan unambiguously stated that Mr. Todisco was ineligible to add supplemental life insurance without submitting a statement of health form. Since it is undisputed that he never submitted this form, Mrs. Todisco's claim for benefits is plainly not a suit for benefits *under the terms of the plan.* Instead, she expressly seeks benefits *not* authorized by the plan's terms.

*Todisco*, 497 F.3d at 101. *See also Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994). If Mrs. Stephens wants relief for the alleged breaches of fiduciary duty, she must seek equitable relief, something not foreclosed by *Varity* and *Todisco*. Mr. Stephens's own shortcomings preclude any recovery for benefits under the terms of the plan, despite Mrs. Stephens's claims that his failures were the result of Citation's and/or Reliance's breaches of fiduciary duty. Reliance's and/or Citation's actions, even if proscribed by ERISA, do not permit a court to

revive a claim for **benefits** under the plan when such a claim is clearly foreclosed by the terms of the plan. If Mrs. Stephens wants to complain about the defendants' actions, she must do so in an independent claim for breach of fiduciary duty under § 502(a)(3).

A court, especially the very court that was instructed by the Eleventh Circuit in *Andrews*, cannot grant a non-existent Rule 12(b)(6) motion. This inartfully pled § 502(a)(3) claim passes Rule 56 muster, even though plaintiff herself may think she is invoking § 502(a)(1)(B). The Rule 56 motions under consideration, insofar as they challenge Mrs. Stephens's right to travel both the § 502(a)(1)(B) track and the § 502(a)(3) track, will be granted, but only to the extent that Mrs. Stephens is invoking § 502(a)(1)(B).[5]

Mrs. Stephens's only cognizable claim is for an ERISA fiduciary's misrepresentation or failure to inform. Section 502(a)(3) authorizes an action "by a participant, beneficiary, or fiduciary, (A) to enjoin any act or practice which violates any provision of this title or the terms of this plan, **or (B) to obtain other appropriate equitable relief**." (emphasis added). *Mertens v. Hewitt Associates*, 508 U.S. 248, 113 S.Ct. 2063 (1993), explains

---

[5]     Ironically, Mrs. Stephens's failure to convince the court that she has a cognizable claim under § 502(a)(1)(b) may be the saving grace of her § 502(a)(3) claim. In *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, (11th Cir. 1999), the Eleventh Circuit upheld a district court ruling that "an ERISA plaintiff with an adequate remedy under § 1132(a)(1)(B), cannot alternatively plead and proceed under § 502(a)(3)." *Id.* at 1088. Thus, Mrs. Stephens's inability to plead a claim under § 502(a)(1)(B) is what allows her to proceed under § 502(a)(3).

that relief not available under § 502(a)(1)(B) is available under § 502(a)(3). *Id.* at 257-59. *Mertens* further explains that equitable relief is the **only** relief available under § 502(a)(3). *See Id.; See also Jones v. Am. Life and Accident Ins. Co.*, 370 F.3d 1065, 1071 (11th Cir. 2004); *Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317, 1327-28 (N.D. Al. 2004). Mrs. Stephens's claim under § 502(a)(3) is an equitable claim for "restitution", even if she inartfully states it.

In *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708 (2002), the Supreme Court clearly recognizes the availability of restitution as an equitable remedy under § 502(a)(3). In describing the distinction between the legal recovery of damages and an equitable claim for restitution, it explains:

> In cases in which the plaintiff could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit that the defendant had received from him, the plaintiff had a right to restitution *at law*... In contrast, a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.
> (emphasis in original).

*Great-West*, 534 U.S. at 213; *See also Green v. Holland*, 480 F.3d 1216, 1225-26 (11th Cir. 2007); *Hall v. Liberty Life Asssur. Co. of Boston*, 595 F.3d 270, 274-75 (6th Cir. 2010). This court has never fully understood this difference between the recovery of a

particular sum of money as "damages", and a claim for "restitution"
of precisely the same sum. This court acknowledges, however, that
courts binding on this court do recognize such a distinction. *See
Popowski v. Parrott*, 461 F.3d 1367, 1373 (11th Cir. 2006)[6]. From
the pleadings and briefs in this case, the parties are more babes
in the woods on this subject than this court is. We are all bumping
into the same trees.

In *Great-West* the Supreme Court denied a claim for restitution
under § 502(a)(3) only because "the funds to which petitioners
claim an entitlement under the Plan's reimbursement provision-the
proceeds from the settlement of respondents' tort action-are not in
respondents' possession." 534 U.S. at 214. Relying on *Great-West*,
other courts have granted or affirmed the dismissal of actions
brought by beneficiaries against insureds' employers under §
502(a)(3), when the disputed benefits should have been paid by
**insurers** and not by **employers**. As explained by the Fifth Circuit in
*Amschwand v. Spherion Corp.*, 505 F.3d 342 (5th Cir. 2007),"a
defendant's possession of the disputed *res* is central to the notion

---

[6]    Other courts, relying on *Great-West*, have dismissed restitutionary
claims under § 502(a)(3) because they sought the same funds that might have
been recoverable for breach of contract. Perhaps because such a reading would
leave no available relief under § 502(a)(3) for an independent breach of
fiduciary duty, and thus render the subsection meaningless as a tool for
individual beneficiaries, the Supreme Court clarified its *Great-West* holding
in *Sereboff v. Mid-Atlantic Services, Inc.*, 126 S.Ct. 1869, 1875 (2006). As
explained by the Eleventh Circuit in *Popowski*, after *Sereboff*, "a claim that
'alleges breach of contract and seeks money' but 'seeks recovery through a
constructive trust or equitable lien on a specifically identified fund' in the
defendant's possession and control is equitable relief for the purposes of §
1132(a)(3)." *Popowski*, 461 F.3d at 1373 (citing *Sereboff,* 126 S.Ct. at 1875
(2006)).

14

of a restitutionary remedy." *Id* at 347-48; *See also Todisco*, 497 F.3d at 99-101. In *Kishter v. Principal Life Ins. Co.*, 186 F. Supp. 2d 438 (S.D.N.Y. 2002), a case remarkably similar to this one, the plaintiff sued a deceased participant's employer for breach of fiduciary duty under ERISA, seeking the proceeds of the employer's ERISA life insurance plan. Relying on *Great-West*, the Southern District of New York granted summary judgment for the employer, holding that under § 502(a)(3):

> "[T]he money to which plaintiff has a claim is in the hands of Principal, the life insurance carrier, and not LAI [the employer]. The money he seeks from LAI is the damage he has suffered because Principal will not pay the money **it has**."

*Id.* at 445 (emphasis added). Unlike the *Kishter* plaintiff, Mrs. Stephens has sued the insurance carrier, even though she waited to do so until after she had exhausted her administrative remedies with the carrier, which happened also to be the plan administrator. The Eleventh Circuit has not addressed the precise question of whether a beneficiary can sue his employer for ERISA life insurance proceeds not in the employer's possession.[7] The Eleventh Circuit has held, however, that in order to recover under § 502(a)(3) a plaintiff must "seek relief from an identifiable fund." *Popowski*,

___

[7]    In a decision that pre-dates *Great-West*, the Eleventh Circuit held that an employer could be a plan administrator, and thus owe a fiduciary duty to a participant, even when the insurance policy in question was funded by a third party. *See Hamilton v. Allen-Bradley Co.*, 244 F.3d 819 (11th Cir. 2001). In remanding to the district court, the Eleventh Circuit never addressed what potential remedies might be available against the employer-fiduciary if it was found to have breached its fiduciary duties. *Id.*

461 F.3d at 1375. Mrs. Stephens seeks relief from an "identifiable fund", namely, Reliance's **reserves**. Consistent with *Popowski*, this court reads *Great-West* as other courts have read it. In this case, the funds which Mrs. Stephens claims are in Reliance's hands, and any restitution to which Mrs. Stephens is entitled must be provided by Reliance, and not by Citation. Therefore, Citation's motion (and, as already stated, Bentley's motion), will be granted, and all claims against Citation will be dismissed with prejudice.

Reliance is the only party against which Mrs. Stephens can seek relief under § 502(a)(3). The theoretical availability of such relief, however, is not enough for her to survive Reliance's Rule 56 motion. There must, at a minimum, be an issue of material fact as to whether Reliance was an ERISA fiduciary, and if so, whether it breached a duty owed Mr. Stephens. Perhaps because of the vagueness of Mrs. Stephens's complaint, or perhaps because Reliance wants to operate under the insurer-friendly "abuse of discretion" standard, Reliance has not addressed a § 502(a)(3) claim, or the concept of "restitution".[8]  Instead, Reliance simply contends that it did not abuse its discretion when it denied Mrs. Stephens's life insurance benefits claim. For a claim brought under § 502(a)(3),

---

[8]     At first glance it might appear that Reliance, which argues its Rule 56 motion under § 502(a)(1)(B), was simply responding to Mrs. Stephens's claim, first seen in her brief in opposition to Citation's motion, that her claim is "in essence" a claim for benefits under § 502(a)(1)(B). However, Reliance filed its Rule 56 motion well before Mrs. Stephens filed her brief in response to Citation's motion. The claim for breach of fiduciary duty was more than adequately stated in the amended complaint, and therefore should have been addressed. *See* Am. Compl. ¶ 4.

16

unlike a claim under § 502(a)(1)(B), this court doubts that Reliance could interpose *Bruch* discretion as a defense, forcing the court to decide whether or not that discretion was abused. Mrs. Stephens alleges that Reliance took or failed to take certain actions that constituted breaches of fiduciary duty. These actions were independent from the ultimate denial of benefits, even if interrelated. The question for the court to decide is whether or not Reliance did take, or fail to take, those particular complained of actions. The court is reluctant to decide whether Reliance can erase its own sins by a mere exercise of discretion, but ventures to say that Reliance had no discretion to decide whether it did or did not comply with the law, and if so, whether its failures constituted breaches of fiduciary duty under ERISA. While Reliance prefers not to address Mrs. Stephens's claim of breach of fiduciary duty, instead invoking whatever protection is offered by *Bruch* in § 502(a)(1)(B) cases, this court discerns, as Citation apparently does, that independent claims under § 502(a)(3) are both stated in Mrs. Stephens's complaint and are not foreclosed by *Bruch*. It should be noted that even if Reliance's preferred standard of review is implicated, and if this court were called upon to decide whether Reliance abused its discretion, this court would decide, based on this undeveloped record, that Reliance did abuse its discretion.

On the undisputed facts the court finds that Reliance did, in

17

fact, have a fiduciary relationship with Mr. Stephens. The ultimate question remains: does Mrs. Stephens, wearing either or both of her hats, have a viable *prima facie* claim against Reliance?

> Under ERISA, a person or entity is a fiduciary to the extent:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary responsibility in the administration of such plan.

29 U.S.C. 1002(21)(A) (2006)(ERISA § 100). Under ERISA, an entity is a fiduciary "to the extent" it performs certain listed functions or responsibilities. Thus, "fiduciary status under ERISA is not an 'all-or-nothing concept,' and 'a court must ask whether a person is a fiduciary with respect to the particular activity at issue.'" *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005)(quoting *Coleman v. Nationwide Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992)). How can Reliance deny that it was a fiduciary when it was the plan administrator and it was involved, directly or indirectly, in specific actions that Mrs. Stephens complains of?

There are two colorable fiduciary claims against Reliance. They both involve disputes of material fact. First, Mrs. Stephens contends that Mr. Stephens was never furnished a copy of the Life Plan. Second, she claims that Mr. Stephens submitted an application for premium waiver to which Reliance did not respond. (Am. Compl. ¶ 3, 4). From these facts Mrs. Stephens reasonably extrapolates that had Mr. Stephens been furnished a copy of the Life Plan,

18

and/or if Reliance had timely responded to the application for premium waiver, Mr. Stephens would have exercised his rights for continued coverage, in which event Mrs. Stephens would be entitled to the death proceeds. *Id.* Bentley swears that she did, in fact, send the waiver application to Reliance, although she strangely says she understood that Mr. Stephens did not qualify. (Aff. of Sarah Bentley at ¶¶ 16-18). What she says not only raises credibility concerns, but tends to prove an ongoing agency relationship between Citation and Reliance.

Reliance's claim that Mr. Stephens received a copy of the Life Plan can be rebutted by Mrs. Stephens at trial. She might testify that Mr. Stephens always kept all his important papers in a particular place and that, after she diligently searched, she found no SPD or copy of the Life Plan. The mere fact that she knew that an insurance policy existed on Mr. Stephens's life, upon which Citation was paying the premiums, does not concede that Mr. Stephens had been furnished a copy. Mrs. Stephens might also offer testimony from other Citation employees or former employees to the effect they were never furnished a copy of the Life Plan. Mrs. Stephens might even get Citation to admit that it has nothing in its personnel files to prove when or if Mr. Stephens was actually furnished a copy of the Life Plan. The total relevant evidence, at trial, direct and circumstantial, can only be speculated about.

ERISA § 102 (29 U.S.C. § 1022 (2006); 29 U.S.C. §

1024(b)(1)(A) (2006)), unequivocally requires that a SPD be provided to a participant. This duty, while not referenced in Mrs. Stephens's complaint, easily comes within the ERISA definition of a fiduciary function, and thus is a vehicle for seeking equitable relief under § 502(a)(3). Reliance admits that none of **its** employees ever furnished a copy of the SPD or Life Plan to Mr. Stephens. (Reliance Ans. at 5). Simultaneously, Reliance claims that it had no duty to do so. *Id.* Can a plan **administrator** rely entirely on the plan **sponsor** to perform all of the ERISA required communications with a beneficiary whose life is insured by the **administrator**? Citation asserts, without written proof, that it furnished Mr. Stephens a SPD and/or a copy of the Life Plan. If Reliance seriously relies upon its claim that it was **never** an ERISA fiduciary under the Life Plan, it contradicts itself. While not admitting that it had any duty to provide Mr. Stephens with a SPD and/or a copy of the Life Plan, Reliance says that "[b]y providing Mr. Stephens with a copy of the **policy**, co-defendant Citation fulfilled all of its duties under ERISA." (Reliance's Reply Br. at 3)(emphasis added). By calling its policy a "policy", Reliance implies some sort of distinction between "insurance" and an ERISA Plan. While Citation itself does not have a "restitution" obligation to Mrs. Stephens because it is not possession of the *res*, Citation was a **co-fiduciary** with Reliance. It was Reliance's agent when it failed, if it failed, to furnish a copy of the SPD

and/or Life Plan to Mr. Stephens, and/or when it otherwise materially misled Mr. Stephens respecting his ERISA entitlements. There is, of course, the *ad nauseum* dispute over whether Mr. Stephens did, in fact, receive a copy of the Life Plan, but that dispute is still unresolved, unless Reliance had and implicitly exercised the right to decide such a fact question against Mrs. Stephens without any evaluation of the evidence and without asking any questions to explore the relevant unexplored evidence.

No one disputes that "a 'fiduciary must give complete and accurate information in response to participants' questions'... [and] ERISA specifies that the plan administrator must furnish, on written request, any information regarding the operation of the plan." *Hamilton v. Allen-Bradley Co., Inc.,* 244 F.3d 819, 827 (11th Cir. 2001)(quoting *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992)). Reliance's attempt to deny that it was the plan administrator is half-hearted. Why? Because when it relies on the fact that it was given full discretion to interpret the plan and to evaluate claims, and therefore should be given the deference granted to "administrators" under *Bruch,* it is admitting that it was a fiduciary. (Reliance Ans. at 7; Reliance's Br. in Supp.).

On December 9, 2006, Mr. Stephens, who acted through the plan **sponsor**, mailed to Reliance, the plan **administrator**, the crucial question that it never answered, that is, until after Mr. Stephens died and after Mrs. Stephens made her claim. Whether or not

Reliance, actually or constructively, was aware on or shortly after December 9, 2006, that Mr. Stephens was disabled (which, for aught appearing, may have been the case before he reached the age of sixty), Reliance's complete failure to respond to Mr. Stephens's application for a waiver constituted a breach of fiduciary duty under § 502(a)(3). Unreturned U.S. mail is presumed to have been delivered. If Reliance is correct in asserting that Mr. Stephens was not eligible for a premium waiver on December 9, 2006, it does not follow, as a matter of law, that Reliance's failure to respond **at all** to the waiver application did not itself constitute a violation of fiduciary duty. There are, of course, the unaddressed sub-disputes as to whether the waiver application was sent to the proper address, as to whether Reliance actually received it, and if it was received, as to why it was not answered. There is also the core dispute as to whether, if Mr. Stephens had received a prompt response from Reliance to the December 9, 2006 waiver request, he would have timely performed the obligations necessary to accomplish conversion or portability. **On December 9, 2006, Reliance was still cashing premiums on Mr. Stephens's life coverage**. A legitimate dispute over such a crucial fact should not be dispositively decided solely by a completely conflicted administrator. It should be decided by a court after the court hears and carefully considers the evidence bearing on the dispute or disputes.

Reliance argues that because Mr. Stephens stopped working in

August, 2006, approximately four months before his application for
premium waiver, he was not eligible for the conversion or
portability privileges. From this it asks the court to conclude
that its not responding to the waiver application has no legal
significance. (Reliance's Br. in Supp. at 11).  The Life Plan
defines eligible employees as "active, full-time salaried
employees". (Ex. 1 to Dec. of Karen McGill (AR - 18)). Reliance
hopefully claims that as of August 2006, Mr. Stephens was not an
"active, full-time employee", and therefore was not eligible to
invoke any of the Life Plan's provisions, so that any failure by
Reliance to respond could not have caused actionable damage. This
argument is untenable. The overwhelming evidence is that Mr.
Stephens was covered under the Life Plan **until his premium payments
ceased on February 28, 2007.** Citation treated him as an employee
until that date. While it is true that he did not physically report
to work after  August, 2006, Citation continued to pay his salary
and benefits, **including premiums for the Life Plan, through
February 28, 2007.** In an internal document related to Mrs.
Stephens's appeal from Reliance's denial, Reliance admits that "**Mr.
Stephens' [sic] coverage terminated on February 28, 2007.**"
(Reliance's Br. in Supp. at Ex. 1 to Dec. of Karen McGill (Ar -
11)(emphasis added)). This admission cannot be squared with a
contention that Mr. Stephens was not an employee on December 9,
2006. Citation admits that "[Mr.] Stephens remained eligible for

23

participation in the Life Plan and Citation continued to pay his premiums relating thereto during this six (6) month period through February of 2007." (Citation's Br. in Supp. at 8). Mrs. Stephens testifies that after August, 2006, Mr. Stephens, in his own mind, had not ruled out a return to work, and instead thought of himself as on leave of absence pending decisions on his claims for long-term disability benefits and social security benefits. A reasonable fact-finder could easily find that Mr. Stephens was still an employee on December 9, 2006.

Conspicuously absent from the record is whether Citation's ERISA **disability plan**, like the Life Plan, was insured and/or administered by Reliance. Perhaps because of the overwhelming evidence to the contrary, Reliance, in its reply brief, slacks up on its claim that Mr. Stephens was not covered when the wavier application was sent on December 9, 2006. It even admits that "[t]he key issue in this case is when premiums stopped, because **this is when coverage ended.**" (Reliance's reply Br. at 3)(emphasis added). The court is less confused than Reliance is. If Mr. Stephens was covered until February 28, 2007, as Reliance concedes, it is entirely possible that if Mr. Stephens had received a prompt response to the December 9, 2006 communication, he would have gotten busy pursuing his then outstanding rights to conversion and/or portability. Mrs. Stephens's claim for breach of fiduciary duty against Reliance, based on its handling or mishandling of the

24

matter, whether through Citation, or directly, cannot be summarily dismissed under a § 502(a)(3) analysis. Neither can Reliance set up its grant of *Bruch* discretion as a defense, especially when it was a clearly conflicted decision-maker. Reliance does not have the power to deny a named beneficiary's claim to life insurance proceeds if that claim is for a breach of fiduciary duty under § 502(a)(3). The administrator may have the discretionary power to deny a plain vanilla benefits claim under § 502(a)(1)(B) unless it abuses its discretion, but it cannot deny a claim for restitution when a violation of § 502(a)(3) has occurred. If Reliance purports to have decided every dispute of material fact against Mrs. Stephens, it has not sufficiently shared its rulings in this regard with Mrs. Stephens or this court. Its rationale remains murky or hidden. ERISA requires the communication of a rational reason for a claim denial. A resolution of unresolved material disputes of fact is crucial to any outcome in a controversy like this one.

The fact that Mr. Stephens died is, of course, not disputed. Whether Reliance received the premium waiver request on or about December 9, 2006, and whether Mr. Stephens was timely made aware of the determinative provisions of the Life Plan, as discussed above *ad nauseum*, are questions that a conflicted fiduciary should not be allowed to answer dispositively without judicial review, whatever the standard of review may be. Mrs. Stephens is, in this court's opinion, entitled to an evidentiary hearing. The obvious continued

25

existence of material contested facts may explain Reliance's careless retreat to a simple insistence that it did not "abuse its discretion".  Both Reliance and Mrs. Stephens have danced around the question of what constitutes an "abuse of discretion" under these *sui generis* procedural and evidentiary circumstances. The court joins the dance by concluding the standard of review is not outcome determinative.

## CONCLUSION

Without a Rule 12(b)(6) challenge to the amended complaint, the court finds that Mrs. Stephens has stated a viable claim for breach of fiduciary duty under § 502(a)(3), as against Reliance, and that she has a *prima facie* basis for pursuing the said claim. Her action, insofar as it seeks money damages and/or recovery for a wrongful denial of benefits under ERISA § 502(a)(1)(B), will be dismissed as against all defendants. Because equitable relief is still possible under § 502(a)(3) against Reliance in the form of restitution if at trial she can put some flesh on the bones of her *prima facie* case, Reliance's motion for summary judgment will be denied as to the § 502(a)(3) claim.

A separate appropriate order will be entered.

DONE this 24th day of March, 2010.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

26